In the Matter of JHAN ROBBINS et al., Petitioners, against ADA CHAMBERLAIN et al., Comprising the Board of Inspectors of Elections of the 16th Election District in the Town of Orangetown, Rockland County, Respondents.

In the Matter of ROBERT P. ALLEN et al., Petitioners, against ADA CHAMBERLAIN et al., Comprising the Board of Inspectors of Elections of the 16th Election District in the Town. of Orangetown, Rockland County, Respondents.

In the Matter of ETHEL J. ARNSTEIN et al., Petitioners, against LUCY ENGELHARDT et al., Comprising the Board of Inspectors of Elections of the 13th Election District in the Town of Orangetown, Rockland County, Respondents.

In the Matter of ESTHER M. BESS et al., Petitioners, against PHILIP KLEE et al., Comprising the Board of Inspectors of Elections of the 3d Election District in the Town of Orangetown, Rockland County, Respondents.

Supreme Court, Special Term, Rockland County, October 24, 1947.

*Joseph L. Roesch* for Jhan Robbins and another, petitioner.

*David H. Moses, Morton Lexow* and *William H. Jenkins, Jr.,* for Inspectors of Election, respondents.

*Arthur Garfield Hays* and *Milton M. Carrow* for Esther M. Bess and others, petitioners.

SCHMIDT, J.   The above-entitled proceedings are brought by persons denied registration in the town of Orangetown, Rockland County.   All live in '' Shanks Village '' in said town and in the part of the '' Village '' which, by contract made by the Federal Public Housing Authority with Columbia University is set aside for occupancy solely by certain college students and their families.   Some of the petitioners are students, taking six or more credit hours of work at a college, and at the same time, in many cases, following other occupations as well.   Other petitioners are wives of such students or members of their families.

It is the settled and wise policy of the State that every qualified voter should be safeguarded in the right to vote.   It should be pointed out here that a refusal to accept registration in a given district ·on the ground that a voting residence has not there been acquired is no denial of the.citizen's right to vote at his last voting domicile.   Thus there is no attempt to deny any citizen the right to vote at some place if he possesses the proper qualifications.   It is only a question as to where he is entitled to vote.   The court further finds that there is no ground for the allegations contained in the petitions prepared by one of the attorneys, that a conspiracy exists between certain inspectors and the officials of their party to deprive the petitioners of a right to register and vote.   There is not a scintilla of evidence adduced to support such a charge or to indicate that anyone involved including the inspectors and the petitioners acted in any way other than in good faith and in an honest attempt to comply with the law.

The bipartisan Election Board of Rockland County asked an opinion of the Attorney-General, thus showing the desire of the election officials of both parties to apply the law properly and impartially.   The opinion requested was received in letter form and the opinion was released by the Attorney-General and published with a headnote (1947 Atty. Gen. —).   The court cannot agree fully with the headnote and feels that the headnote is not in all respects sustained by the opinion itself.

Since the petitioners fall into two categories students and nonstudents, the matter will be considered under these two heads.

As to the students, the provisions of the Constitution of the State of New York, article II, section 4, and the Election Law, section 151, must apply. No one can gain or lose a voting residence by reason of being a student of a seminary of learning. Students keep the same voting domicile which they had before they became such students.

Since the student petitioners had to be enrolled students at Columbia, or some other school with which Columbia had contracted, before they could be assigned apartments at Shanks Village, they came to their present abodes as students and because they were students and while being such they could not acquire a voting residence at Shanks Village but retained the voting domicile they had before becoming students. As students they could not lose their voting domicile nor acquire a new one in the district where they were students, for this is what the Constitution of the State provides.

The leading authority in this State dealing with the rights of students as voters is the case of *Matter of Garvey* (147 N. Y. 117). In that case the rights of certain theological students were determined. The facts relating to each student were carefully reviewed and in the case of the student Barry who had given evidence of his intention to change his residence to the district in which the seminary was located by letters written to the election officials of his former place of residence, and to the Bishop of New York before he attempted to vote, he was granted the right to vote in the district. In the case of the others who merely claimed that they intended to make the seminary their residence, the right to vote was denied.

The concluding paragraph of the opinion in that case is as follows: " It may be urged that the enforcement of this rule will render it well nigh impossible for a student to establish a residence in a seminary of learning, but the very obvious answer is that the letter and spirit of the Constitution contemplate such a result; the sojourn of the student is assumed to be temporary, and the law preserves to him his former residence, notwithstanding his absence therefrom."

This paragraph is quoted by Judge LOUGHRAN in *Watermeyer* v. *Mitchell* (275 N. Y. 73) and the *Garvey* case (*supra*) is cited by Judge CARDOZO in *Matter of Blankford* (241 N. Y. 180).

*Matter of Seld (Seigfred)* (268 App. Div. 235) is cited as a case in point but is clearly distinguishable. Seld was in the Navy stationed at Sampson, New York. His wife was a teacher in Seneca Falls. With permission of his superiors to live off the base, he rented premises in Seneca Falls and he and his wife

established their abode there. As a serviceman he could have lived on the base and, servicemen falling in the same category as students, he would not have gained a voting residence there nor lost the one he had before joining the Navy. He was held to have acquired a voting residence in Seneca Falls because he had gone there not as a serviceman but independently of that status. No one could cause him to lose his voting residence there no matter where the Navy transferred him. In the instant case the student petitioners acquired their present places of abode *by reason* of their student status and can retain them only so long as that status continues. Seld acquired a voting residence at a place not connected with the Navy and *despite* the fact that he was a serviceman. The petitioners were able to acquire their present quarters only *because* they were students.

The petitioner Jhan Robbins is in no different position from other students. The mere fact that he has been nominated for public office confers no voting privileges upon him, and does not affect the question of his voting residence. No party by nominating a person for office can set aside the provisions of the Constitution and the Election Law.

The nonstudent members of students' families, however, are under no such constitutional or statutory provision. If they meet the residence and other voting requirements imposed by our Election Law, they are entitled to register and to vote. Section 61 of the Domestic Relations Law confirms this as to the wives and reads as follows: " § 61. *Married woman's domicile.* The domicile of a married woman shall be established by the same facts and rules of law as that of any other person for the purpose of voting and office-holding."

These nonstudents are in the same legal position with respect to registering and voting as other citizens, many of whom have month-to-month tenancies or tenancies at will or are engaged in occupations where they are *subject to transfer by their employers at any time.* Such persons are customarily allowed to register and vote if they meet the requirements of the Election Law. Students' wives should not be held to be under any disqualification when such is not specifically provided by law but should be accorded the same benefits and privileges enjoyed by other citizens whose residence qualifications are similar in nature and similarly established. The challenge affidavits show that such petitioners intend to maintain their residences in the districts indefinitely.

The court therefore finds that the student petitioners are not entitled to registration and that the nonstudent petitioners are

entitled to be registered. The Boards of Election are, therefore, directed to convene on the 25th day of October, 1947, to register those petitioners qualified to be registered under this decision. Submit order accordingly.